

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN A. GREAGER, II | Violation: Title 18, United States Code, Section 1347 |

JUDGE GETTLEMAN
MAGISTRATE JUDGE JANTZ

The UNITED STATES ATTORNEY charges:

1. At times material to this Information:

   a. Defendant JOHN A. GREAGER, II was a physician licensed in Illinois.

   b. GREAGER owned and operated Cancer Therapy Associates, S.C., located in Lombard, Illinois, which provided health care services to patients, including mole removal procedures to screen for cancer.

   c. Employee A worked at Cancer Therapy Associates, S.C. and handled the billing for patients for whom GREAGER performed mole removal procedures.

   d. Employee B was a medical technician who worked at Cancer Therapy Associates, S.C. and assisted GREAGER in performing mole removal procedures, including preparing pre-operative and post-operative paperwork.

   e. Employee C was a medical technician who worked at Cancer Therapy Associates, S.C. and assisted GREAGER in performing mole removal procedures, including preparing pre-operative and post-operative paperwork.

1

f.  The Medicare Program was a federal health care benefit program, as defined in Title 18, United States Code, Section 24(b), that provided free or below cost health care benefits to certain eligible beneficiaries, primarily individuals who were over the age of 65 or disabled. Enrolled providers of medical services to Medicare recipients were eligible for reimbursement for covered medical services. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the rules, regulations, policies, and procedures governing reimbursement, and to keep and allow access to records and information as required by Medicare.

g.  Blue Cross Blue Shield of Illinois was a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that provided health insurance to groups of individuals through their employer-sponsored health insurance plans. Blue Cross Blue Shield of Illinois reimbursed health care providers for services rendered to patients when, among other criteria, those services were actually provided as described.

h.  Health care benefit programs (including Blue Cross Blue Shield of Illinois and Medicare) utilized a national correct coding practice for claims payment that relied on the American Medical Association ("AMA") Physicians Current Procedural Terminology ("CPT") system, which was published in the AMA Current Procedural Terminology Manual ("CPT Manual"). The AMA developed, maintained, and copyrighted CPT codes assigned to every service that a medical provider could provide to a patient. The provider used the CPT codes on bills submitted to health

2

care benefit programs in order to obtain reimbursements. The health care benefit programs used the codes to determine what amount, if any, would be reimbursed to the provider.

   i. CPT Code 23077 covered mole removals, namely, the removal of less than five centimeters of tissue growth of the shoulder area.

   j. CPT Code 27049 covered mole removals, namely, the removal of less than five centimeters of tissue growth of the pelvis or hip area.

   k. CPT Code 14020 covered mole removals, namely, the removal of tissue around a wound of 10 square centimeters or less of the scalp, arms, or legs.

   l. Cancer Therapy Associates, S.C. was required to submit certain claim information to the health care benefit programs for reimbursement for covered services provided to patients. Required claim information included the claimant's name; his/her insurance number; his/her date of birth; the health care services provided; the location where the health care services were provided; the name and National Provider Identifier of the medical provider providing the health care services; and the charge for each health care service provided.

   m. The health care benefit programs paid for covered services for which a representation had been made that the services were actually provided to patients on the dates of service.

2.      Beginning in or around 2015 and continuing through in or around June 2021, at Lombard, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN A. GREAGER, II,

defendant herein, along with Employee A, Employee B, Employee C, and others, participated in a scheme to defraud a health care benefit program, namely Medicare and Blue Cross Blue Shield of Illinois, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits and services, which scheme is further described in the following paragraphs.

3.      It was part of the scheme that GREAGER and others fraudulently obtained approximately $4.1 million from health care benefit programs by submitting, and causing to be submitted, to the health care benefit programs fraudulent claims that falsely represented that certain health care services, including mole removal procedures, were provided to patients by GREAGER, knowing that those services were not provided as represented on the claims and, at times, were medically unnecessary.

4.      It was further part of the scheme that, at times, GREAGER removed more moles from a patient than was medically necessary. GREAGER dictated patient notes from those unnecessary mole removal procedures, including which CPT

code was to be billed, to Employee B and Employee C, who created the patient file and provided that paperwork to Employee A to submit claims for reimbursement to the health care benefit programs for those medical procedures.

5. It was further part of the scheme that, in order to claim a greater reimbursement amount, GREAGER created and caused to be created false paperwork indicating that certain moles had been removed from one part of a patient's body when GREAGER had removed those moles from another part of a patient's body.

6. It was further part of the scheme that, in order to claim a greater reimbursement amount, at GREAGER's direction, Employee A sent claims seeking reimbursement for procedures billed under CPT Codes 23077, 27049, and 14020 to the health care benefit programs indicating that only one mole had been removed on a given date when GREAGER had removed multiple moles from a patient on that date. To facilitate this fraudulent billing, GREAGER instructed Employee B and Employee C to delay sending moles that GREAGER had removed to a pathology laboratory for cancer screening, and instead to send one mole at a time to a laboratory weeks after the moles had been removed. At GREAGER'S instruction, Employee B and Employee C falsely wrote on those individual mole specimen containers that the moles had been removed on the date that it was sent to a laboratory when, as GREAGER knew, it had been removed on an earlier date.

7. It was further part of the scheme that, with GREAGER's knowledge and to keep track of when mole specimens were to be sent to a laboratory for a pathology

5

report, Employee A, Employee B, and Employee C maintained a surgery appointment book with asterisks marked next to patient names which falsely denoted that patients had come in for a mole removal surgical appointment with GREAGER on a given day.

8. It was further part of the scheme that when Employee B and Employee C sent to a laboratory mole specimens that had been removed from a patient's body by GREAGER on a prior date, GREAGER, Employee B, and Employee C created paperwork with false dates of services to make it appear as though patients received health care benefits under CPT Codes 23077, 27049, and 14020 on the dates that the mole specimens were sent to the laboratory.

9. It was further part of the scheme that Employee B and Employee C, at GREAGER's direction, provided Employee A with false paperwork to substantiate the fraudulent claims that Employee A submitted to the health care benefit programs under CPT Codes 23077, 27049, and 14020, when GREAGER, Employee A, Employee B, and Employee C knew that the health care benefits in those claims had not been provided to the patients on the claimed dates of service.

10. It was further part of the scheme that GREAGER, along with Employee A, Employee B, and Employee C, created false paperwork and submitted fraudulent claims to the health care benefit programs seeking reimbursement for mole removal procedures billed under CPT Codes 23077, 27049, and 14020 on dates when GREAGER was travelling out of Illinois, with GREAGER, Employee A, Employee B,

and Employee C knowing that the health care services identified in the paperwork had not been provided.

11. It was further part of the scheme that, in response to Medicare audits of Cancer Therapy Associates, S.C. and GREAGER for claims for reimbursement of CPT Codes 23077, 27049, and 14020, GREAGER, along with Employee A, Employee B, and Employee C, created false paperwork, including false patient records, to substantiate the fraudulent claims at issue in the audits, knowing that the health care services had not been provided as stated in the claims. In creating this false paperwork in response to the Medicare audits, GREAGER and Employee B copied and pasted patient signatures from prior visits to create false patient visit notes making it appear as though GREAGER conducted a mole removal procedure on a date when he had not seen the patient.

12. It was further part of the scheme that GREAGER instructed Employee A to send to Medicare the false paperwork that GREAGER, Employee A, and Employee B had created to conceal the existence of the scheme and to ensure that Medicare would not seek recoupment of payments that it had already made for the claims at issue in the audits.

13. It was further part of the scheme that GREAGER deposited, and caused to be deposited, the money from the health care benefit programs for mole removal procedures services that were not actually provided as billed, or were medically

unnecessary, into a bank account in the name of Cancer Therapy Associates, S.C. on which GREAGER was an authorized signer.

14. It was further part of the scheme that GREAGER and others concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

15. On or about January 21, 2020, at Lombard, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN A. GREAGER, II,

defendant herein, did knowingly and willfully execute and attempt to execute the above-described scheme by submitting and causing to be submitted a claim to a health care benefit program, namely Medicare, for health care services purportedly provided to patient P.K. on November 16, 2019, that were not actually provided;

In violation of Title 18, United States Code, Section 1347.

*/s/ John R. Lausch, Jr.,* by TCM
UNITED STATES ATTORNEY